# UNITED STATES DISTRICT COURT

# DISTRICT OF MAINE

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | |
| ) | |
| **v.** ) | **CRIMINAL NO. 04-86-P-H** |
| ) | |
| **LUIS RODRIGUEZ,** ) | |
| ) | |
| **DEFENDANT** ) | |

## SENTENCING PROCEDURAL ORDER

As a result of the Presentence Conference, and in an attempt to follow the Supreme Court's subtle admonition against too-ready acceptance of plea agreements,[1] I directed the parties to file a joint explanation of why I should accept the drug quantity that they agreed to in the Plea Agreement (more than 500 grams but less than 2 kilograms of cocaine resulting in a base offense level of 26) rather than the drug quantity found in the Presentence Report (75 kilograms of cocaine resulting in a base offense level of 36). I also directed them to explain why the defendant should get a 2-level reduction for role in the

---

[1] United States v. Booker, 125 S. Ct. 738, 762 (2005):

> Congress, understanding the realities of plea bargaining, authorized the [United States Sentencing] Commission to promulgate policy statements that would assist sentencing judges in determining whether to reject a plea agreement after reading about the defendant's real conduct in a presentence report (and giving the offender an opportunity to challenge the report). This system has not worked perfectly; judges have often simply accepted an agreed-upon account of the conduct at issue.

offense as provided by the plea agreement rather than no role adjustment as provided by the Presentence Report.[2]

### *Role Reduction*

On the question of role reduction, the joint explanation states:

> The parties agree that the evidence establishes that Defendant acted as a middle-man on two - three occasions in transactions between Couture and an unidentified source or sources of supply in Lawrence, Massachusetts. The Defendant obtained a small amount of money or cocaine for his role, and he was a relatively minor player in the over-all conspiracy involving Mr. Couture and others.

Joint Sentencing Mem. at 7 (Docket Item 104). Although I understand that the government cannot present evidence or argument to resist a role reduction in light of its plea agreement, the burden of proof remains with the defendant to show that he is entitled to a role reduction. A mere agreement between the parties as to what the evidence establishes is not sufficient in light of the findings in the Presentence Report. Thus, the role adjustment question remains open and I will have to see what is presented to me at the sentencing hearing, given the defendant's burden of proof.

### *Drug Quantity*

The parties have given a careful explanation of how, post-Blakely and pre-Booker,[3] they arrived at their agreement concerning drug quantity attributable to this defendant under Colon-Solis.[4] At the time they entered the plea agreement, the parties believed that the government would have to

---

[2] The defendant has withdrawn his objections to the Presentence Report's calculation of criminal history and denial of the safety valve.
[3] Blakely v. Washington, 542 U.S. 296 (2004).
[4] United States v. Colon-Solis, 354 F.3d 101 (1st Cir. 2004).

2

establish drug quantity beyond a reasonable doubt.[5] After <u>Booker</u>, proof beyond a reasonable doubt is not required for the now-advisory Guidelines. The government is nevertheless bound by its earlier agreement on drug quantity, but I am not.[6] The joint explanation details why, at the time of the plea agreement, the government's potential witnesses concerning larger drug quantities were subject to impeachment. One of those potential witnesses was a co-defendant in this conspiracy, Donald Couture, who pleaded guilty prior to this defendant's plea. In his plea, Couture admitted "traveling on a regular basis" to a supplier in Lawrence, Massachusetts to obtain up to 1 kilogram of powder cocaine per trip. I consider that reliable evidence; Couture would have no incentive to exaggerate his own quantity. His supplier, however, was this defendant, Luis Rodriguez. (Rodriguez admitted to the truth of the prosecution version in his own case, that he "provided cocaine to Couture at various times during this time period [2001 to 2004].") Couture's plea and admission occurred on June 24, 2004, well before Rodriguez's plea on December 13, 2004. I do not see how Couture's later credibility problems reduce the credibility of his early guilty plea admission of regular trips involving up to one

---

[5] The post-<u>Blakely</u>, pre-<u>Booker</u> confusion over burden of proof probably explains a case like this. Generally, the U.S. Attorney's Office in this District takes positions on drug quantity that Probation finds supportable.

[6] The plea agreement is a Rule 11(c)(1)(B) agreement, not binding on the Court. Thus, although the government is unable to support a drug quantity higher than it agreed to in the plea agreement, the Court is not bound to accept that lower drug quantity if reliable evidence supports a higher quantity. I understand that pre-<u>Booker</u> the defendant may have expected that the drug quantity in the plea agreement would determine his sentence, for this District had interpreted <u>Blakely</u> to permit enhancements only for stipulated or jury-found conduct. But <u>Booker</u> changed that premise. The question for me as sentencing judge, therefore, is what amount reliable evidence supports now.

3

kilogram each.[7]  The prosecution version at this defendant's guilty plea also establishes specifically that this defendant sold one-half kilogram in April 2004.  An undercover DEA agent can also testify that Rodriguez agreed to sell an additional kilogram in June.  See Presentence Rpt. ¶ 10; Prosecution Version.  All of that is reliable evidence.

On this evidence, I am prepared to accept a drug quantity of at least 2 kilograms but less than 3.5 kilograms and a base offense level of 28.  That still appears to be a gross understatement of the actual drug quantity for which this defendant should be held responsible.  But I am confronted with the government's inability to put on any evidence (because of its plea agreement) and its actual demeaning of the evidence that its two erstwhile witnesses gave to the Probation Office.[8]  Despite my concern that the defendant is responsible for much more cocaine, I cannot base a sentence on evidence that the government says is unreliable.  If the defendant wishes to argue for a lower drug quantity, however, an evidentiary hearing on this issue will be necessary.

### *Conclusion*

The Clerk's Office shall consult with counsel for an estimate of the amount of time required for the sentencing hearing or whether an additional conference is required.

---

[7] In Couture's case, I doubled the quantity because he admitted that after obtaining the cocaine from Luis Rodriguez, he and his partner doubled it (by adding a cutting agent) before distributing it further.  In Couture's case, I also added 500 grams that had been concealed, but that did not affect the offense level.  I do not add it here because it may already be included in the amounts Donald Couture obtained from Luis Rodriguez.

[8] I am not criticizing the government for revealing the defects in its potential witnesses.  I am often concerned that co-conspirator evidence about drug quantity is tainted by an attempt to gain a sentence reduction and to shift the responsibility to someone else.  I applaud the government's candor here.

4

**SO ORDERED.**

**DATED THIS 13TH DAY OF JULY, 2005**

                                        /S/ D. Brock Hornby
                                        **D. BROCK HORNBY**
                                        **UNITED STATES DISTRICT JUDGE**

**U.S. DISTRICT COURT**
**DISTRICT OF MAINE (PORTLAND)**
**CRIMINAL DOCKET FOR CASE #: 04CR86**

| | | |
|---|---|---|
| **United States of America** | represented by | Michael J. Conley<br>Office of the U.S. Attorney<br>District of Maine<br>P.O. Box 9718<br>Portland, ME 04104-5018<br>(207) 780-3257<br>email: michael.conley@usdoj.gov |

**v.**

| | | |
|---|---|---|
| **Luis Rodriguez**<br><br>  Defendant | represented by | Thomas S. Marjerison<br>Norman, Hanson & DeTroy<br>415 Congress Street<br>Portland, ME 04112<br>(207) 774-7000<br>email: tmarjerison@nhdlaw.com |